# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**HUGHES A. ALEXANDER,**

    **Petitioner,**

**vs.**                                                                                   **Case No. 4:12cv141-RH/CAS**

**ERIC H. HOLDER, JR., et al.,**

    **Respondents.**

    _____/

## REPORT AND RECOMMENDATION

Petitioner, proceeding pro se, initiated this case by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on March 29, 2012.  Doc. 1.  Petitioner alleged that he was held in custody in violation of Zadvydas v. Davis, 533 U.S. 678 (2001).  Respondents filed an answer to the petition and contend that Petitioner's custody is lawful because there is a significant likelihood of Petitioner's removal as demonstrated by the fact that travel documents were already received for Petitioner, but he refused to board the aircraft.  Doc. 15.  Petitioner was provided an opportunity to file a reply to the answer, doc. 16, and his reply was timely filed.  Doc. 17.

**Relevant Facts**

Petitioner is in immigration custody, currently housed at the Wakulla County Jail. Doc. 1, at 2. Petitioner is a native and citizen of Dominica, but has been in the United States since June 1986. *Id.* at 3. Petitioner alleged that he was ordered removed in April 2004 and he indicates that he appealed the order of removal, but did not allege when the appeal was dismissed. *Id.* at 5. Petitioner was taken into ICE custody on February 21, 2011, and has remained there since that time. *Id.* at 3-4. Petitioner claimed in the § 2241 petition that the "Consulate has failed to issues [sic] any travel documents to Petitioner or ICE." *Id.* at 6.

Respondents advise that Petitioner was authorized to enter the United States as a non-immigrant visitor for a "temporary period not to exceed six months." Doc. 15, at 1-2. Petitioner remained in the United States and never adjusted his status to that of a Legal Permanent resident. *Id.* at 2.

Respondents demonstrate that Petitioner was convicted on July 24, 1992, for burglary of a dwelling and resisting an officer without violence. Doc. 15, at 2; *see also* doc. 15-1, ¶ 2 (Abraham De Leon Declaration). On December 11, 1992, Petitioner was convicted of larceny, grand theft, and unarmed burglary of a conveyance. *Id.*; *see also* doc. 15-1, ¶ 3. On January 19, 1993, Petitioner was convicted of burglary of a swelling and battery, willful homicide with a weapon, and written threat to kill. *Id.*; *see also* doc. 15-1, ¶ 4. On February 19, 1993, Petitioner was convicted of resisting an officer. *Id.*; *see also* doc. 15-1, ¶ 5. Respondents also point out that Petitioner was arrested eleven other times, but the disposition was either nolle prossed or is unknown. *Id.*; *see also* doc. 15-1, ¶ 6.

Petitioner, however, disputes the criminal history provided by Respondents. Doc. 17, at 1-2. Petitioner contends, under penalty of perjury, that he has "not been convicted of any other crime since 1992." *Id.* at 2, 3. In an attachment to his reply, Petitioner states that in 1992, in case 92-CF-002446, he was convicted in Hillsborough County of burglary of a dwelling, resisting arrest without violence, written threat to kill, and battery. *Id.* at 13. Respondents' exhibit indicates that the convictions for written threat to kill and battery were in 1993, and not part of the July 1992 case. Doc. 15, at 2. Additionally, Petitioner admits to convictions in a 1991 case for grand theft and unarmed burglary of a conveyance in Polk County. Doc. 17, at 13. Respondents' exhibit shows that Petitioner was convicted of those charges on December 11, 1992. Doc. 15-1, ¶ 3. Despite Petitioner's argument to the contrary, the Florida Department of Corrections' website[1] indicates that in addition to the 1992 convictions, he also has seven convictions on January 27, 1993, from Hillsborough County for which he was placed on community supervision. Those charges include burglary of a dwelling, aggravated battery with intended harm, two counts of battery on law enforcement, and two counts of extortion. All charges stem from an offense date of February 14, 1992.

It does not matter for present purposes that Petitioner disputes some of his convictions. Based on Petitioner's convictions, he was "served with a Notice to Appear and placed in removal proceedings on April 21, 2004." *Id.* at 3. Petitioner was ordered removed on July 21, 2009, by an Immigration Judge.[2] *Id.* Petitioner appealed the order

---

[1] The website address is www.dc.state.fl.us.

[2] Petitioner was ordered removed under § 237(a)(1)(B) (alien present in violation of the act, 8 U.S.C. § 1227(a)(1)(B)) and § 237(a)(2)(A)(iii) (convicted of aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii)) of the Immigration and Nationality Act. *See* doc. 1,

of removal to the Board of Immigration Appeals (hereinafter BIA).  *Id.*  The BIA dismissed Petitioner's appeal on February 8, 2011.  *Id.*  At some point, Petitioner filed a motion to reopen, but the motion was denied by the BIA on August 4, 2011.  *Id.*

After Petitioner was taken into custody, ICE "submitted an electronic travel document request to the Consulate of Dominica on February 28, 2011."  Doc. 15, at 3.  On June 1, 2011, the Consulate of Dominica issued a travel document for Petitioner and he was scheduled for an escorted removal flight to Dominica on June 15, 2011.  *Id.*  "On the date of departure, Petitioner refused to board the commercial flight, and the travel document expired that same day, June 15, 2011."  *Id.*

On March 28, 2012, another request was made for a second travel document.  *Id.* at 4.  The request was granted and ICE received a new travel document from the Consulate of Dominica on April 26, 2012.  *Id.*  Petitioner was scheduled for a second escorted flight on May 2, 2012.  *Id.*  Again, Petitioner refused to board the flight.  *Id.*

ICE has been in communication with the Consulate of Dominica concerning another travel document for Petitioner.  *Id.* at 4.  The Consulate has stated that a third travel document will be issued upon receipt of an itinerary, money order, and two photos.  *Id.*  ICE has already provided the requested items to the Consulate, and is awaiting receipt of a new travel document.  *Id.*

Respondents also provide evidence in the De Leon Declaration that twice in 2011, Petitioner "submitted a written correspondence in which he states that he will continue to refuse in cooperating with any removal efforts against him."  Doc. 15-1, at 3.

---

at 15-21.

Petitioner also "verbally stated this course of action to" ICE officials "on numerous occasions." *Id.* Respondents consider Petitioner to be "a Failure to Comply case." *Id.*

**Petitioner's Reply, doc. 17**

In his reply, Petitioner first reasserts his argument that his country has "refusal [sic] to Issue a travel document," but then Petitioner states that he questions the authenticity of the travel document and its signature. Doc. 17, at 1. Petitioner states that he "has never been presented with a travel document to sign, nor seen any." *Id.* Petitioner contends that Respondents have inflated his criminal case history "with additional non-existing Criminal charges which are" different than what Plaintiff lists. *Id.* at 1. Petitioner asserts that he is of good moral character and has "never lived a life of crime" but is a licensed church minister, a leading in his community, and a mentor to young people. *Id.* at 2.

**Analysis**

This Court has jurisdiction over this § 2241 habeas petition as Petitioner is not challenging a final order of removal, but only seeking release from what he asserts is an unlawful and indefinite period of detention pursuant to <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). In <u>Zadvydas</u>, the Supreme Court held that the continued detention of legal permanent aliens beyond the mandated 90-day[3] removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States." *Id.*, at 689, 121 S. Ct. at 2498. For the sake of uniform administration by the federal courts, the

---

[3] Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States. 8 U.S.C. § 1231(a)(1)(A).

Case No. 4:12cv141-RH/CAS

Zadvydas Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' " Clark v. Martinez, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005), *quoting* Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.  The Court also concluded that if "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699, 121 S.Ct. at 2503.

In Clark v. Martinez, *supra*, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.[4]  The Court concluded that there was no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for an admissible alien. Clark, 543 U.S. at 386, 125 S.Ct. at 727.  Thus, it held that the 6-month presumptive detention period prescribed in Zadvydas should be applicable.  *Id.*  Accordingly, under Clark and Zadvydas, when an alien shows that he has been held more than six months beyond the removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted. Clark, 543 U.S. at 386-387, 125 S.Ct. at 727; Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005) (relying on Clark to hold that "an inadmissible alien can no longer be

---

[4] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6), *quoted in* Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005).

detained beyond the statutory 90-day removal period of § 1231(a)(1), where there was no significant likelihood of removal in the reasonable foreseeable future.").

Under 8 U.S.C. § 1231(a)(1)(A), the government has a 90-day period of time to remove an alien. However, the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).[5] Thus, the statute expressly permits an alien to be detained longer than the presumptive removal period where the alien acts or conspires to prevent his removal.

In <u>Sango-Dema v. District Director, I.N.S.</u>, 122 F.Supp.2d 213 (D. Mass. 2000), a case decided before <u>Zadvydas</u>, the court denied habeas relief where the Petitioner was found to be "the cause for the long delay." The court concluded that "an alien cannot trigger [a constitutional right to be free from indefinite detention by the INS] with his outright refusal to cooperate with INS officials." <u>Sango-Dema v. District Director, I.N.S.</u>, 122 F.Supp.2d at 221.

In <u>Powell v. Ashcroft</u>, 194 F.Supp.2d 209 (E.D.N.Y. 2002), a case decided in the wake of <u>Zadvydas v. Davis</u>, the court noted that <u>Zadvydas</u> was concerned with the constitutionality of § 1231(a)(6) where aliens were in " ''deportation limbo because their countries of origin had refused to allow [them] entrance.' " <u>Powell</u>, 194 F.Supp.2d at 211, *citing* <u>Sango-Dema</u>, 122 F.Supp.2d at 221 (explaining <u>Zadvydas</u>). The court held that <u>Zadvydas</u> was inapplicable because it "did not discuss the constitutionality of

---

[5] An alien must be detained during the "removal period." 8 U.S.C. § 1231(a)(2).

Section 1231(a)(1)(C) and the tolling of the removal period during the time of an alien's non-cooperation." Powell, 194 F.Supp.2d at 212, *citing* Guner v. Reno, 2001 WL 940576 (S.D.N.Y. Aug. 20, 2001).  The court held that petitioner's continued detention was appropriate because he had not "provide[d] accurate and complete information to the INS," and that after he did so, it was likely that he would be removed.  Powell, 194 F.Supp.2d at 212.  *See also* Archibald v. I.N.S., 2002 WL 1434391, *8 (E.D. Pa. July 1, 2002) (finding the case factually distinguishable from *Zadvydas* where "Archibald's detention [was] a direct result of his seeking relief from deportation" and holding that because his indefinite detention was a result of his requesting a stay, he could not "be heard to complain[] that the time period during which he has been detained constitute[d] a denial of due process."); Thevarajah v. McElroy, 2002 WL 923914 (E.D.N.Y. Apr. 30, 2002)(holding that petitioner's nearly five years in the custody of INS was constitutional following *Zadvydas* because the continued detention was lengthened largely because of petitioner's own actions); *cf.* Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37 (D.D.C. July 22, 2002) (rejecting respondent's argument that petitioner "has not cooperated in obtaining travel documents because he told Liberian officials that he did not want to return to Liberia" and noting that INS had not argued that "petitioner refused to request travel documents or refused to be interviewed by Liberian officials" and did not deny "his Liberian citizenship, or gave false or misleading information that impeded the issuance of travel documents.").

   In this case, Petitioner's six-month period of removal pursuant to Zadvydas has been tolled as permitted by 8 U.S.C. § 1231(a)(1)(C).  While Petitioner has disputed his criminal history and questions the authenticity of travel documents, Petitioner has *not*

disputed that he refused to cooperate with removal efforts by refusing to board the flight. Even Petitioner's assertion that his country has refused to issue a travel document is contradicted by Petitioner's own statement that he questions the authenticity of the travel document. Petitioner also contradicts himself in stating that he has never seen any travel document because he questions the authenticity of the signature. Doc. 17, at 1.

It is concluded as unrebutted evidence that Petitioner has had travel documents issued for him and he has refused to depart the United States. It is also concluded that based on this finding, Petitioner failed to show that it is unlikely that he can be removed in the "reasonably foreseeable future." Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505. It is reasonable to believe that travel documents will again be provided to effect his removal.

Accordingly, Petitioner may not be heard to complain of delay in effecting his removal. Petitioner has acted to toll the removal period and his continued detention is lawful pursuant to 8 U.S.C. § 1231(a)(1). Petitioner can be removed when he is willing to cooperate and this § 2241 petition should be denied.

In light of the foregoing, it is respectfully **RECOMMENDED** that the petition for writ of habeas corpus, doc. 1, filed by HUGHES A. ALEXANDER, #A097663473, be **DENIED without prejudice**.

**IN CHAMBERS** at Tallahassee, Florida, on July 24, 2012.

   S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.